**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**A.J.P.S.**,

Petitioner,

v.

**JASON BENZEL, *et al*.**,

Respondents.

No. 1:26-cv-11858

**OPINION**

**APPEARANCES:**

Matthew Anthony Johnson
LEGAL SERVICES NYC
IMMIGRANT JUSTICE
40 Worth Street, Suite 606
New York, NY 10013

Michael Martinez
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

*On behalf of Petitioner.*

Christopher James Stratigeas
DOJ-USAO DISTRICT OF NEW JERSEY
970 Broad Street, Room 700
Newark, NJ 07102

John Francis Basiak
U.S. ATTORNEY'S OFFICE
402 E. State Street, Room 430
Trenton, NJ 08608

*On behalf of Respondents.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus challenging the lawfulness of his immigration detention. (Pet., ECF No. 1). The Court granted the Petition and ordered Petitioner released on October 7, 2026. (ECF No. 28). This Opinion sets forth the reasons for that decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner A.J.P.S.[1] is a native and citizen of Ecuador who has resided in the United States for approximately six years. (ECF No. 7-1 at 3). According to Respondents, Petitioner entered the United States through Miami International Airport in Miami, Florida, on or about March 11, 2020, as a B-2 Visitor for Pleasure with authorization to remain in the United States until September 10, 2020. (*Id.*). On June 24, 2021, Petitioner filed an Application for Asylum and Withholding of Removal with the U.S. Citizenship and Immigration Services ("USCIS"). (*Id.*).

While awaiting adjudication of his asylum application, Petitioner established a life in New York. (ECF No. 16 at 2). After moving to the Bronx in 2022, he promptly notified the Department of Homeland Security ("DHS") of his updated address. (ECF No. 16-4). Petitioner has no criminal convictions.[2] On October 17, 2024, Petitioner applied to renew his employment authorization with USCIS, which was approved on September 24, 2025. (ECF No. 7-1 at 4; *see also* ECF No. 1 ¶¶ 27–28). Petitioner thereafter maintained steady employment at a food-packaging warehouse in

[1] Petitioner filed a motion to proceed under pseudonym at the outset of these proceedings. (ECF No. 6). The Court granted the motion on September 20, 2026. (ECF No. 14).

[2] On or about March 12, 2024, Petitioner was encountered by ICE in New York City following his arrest by the New York City Police Department on a misdemeanor assault charge. (ECF No. 7-1 at 3). There was no enforcement action taken against Petitioner at that time. (*Id.*). Respondents do not assert that Petitioner's criminal history warrants mandatory detention pursuant to 8 U.S.C. § 1226(c).

Newark, New Jersey. (ECF No. 16-1 at ¶ 4).

On September 10, 2026, ICE agents arrested Petitioner in Newark, New Jersey, while he was on his way to work. (ECF No. 7 at 1). In a sworn declaration, Petitioner describes the circumstances of his arrest as follows:

> From a distance, I could see a dark Tesla sedan without a front license plate parked on the side of the street under the I-78 overpass facing me. Once I was a few feet in front of the Tesla, a man suddenly got out of the front passenger door wearing a brown vest and said, in Spanish, something like, "We are ICE, and we are making an inspection." The officer grabbed my left hand and pulled me. . . They held me against the vehicle, took my bag, handcuffed my hands behind my back, and put me into the back seat of the Tesla. The men, who I now understand are ICE agents, did not address me by name during the encounter. I had never seen these men before, and nothing they said to me before putting me in the vehicle indicated they knew my identity before they stopped me.

(ECF No. 16-1 at ¶¶ 5–9). According to Petitioner, the agents then searched his wallet and entered his information into a laptop computer. (*Id*. at ¶¶ 10–11). They subsequently transported Petitioner to an ICE office for processing, where officers presented him with documents relating to his arrest for the first time. (*Id*. at ¶¶ 14–15). Petitioner was then detained at the Elizabeth Detention Center. (*Id*. at ¶ 19). Respondents have not submitted any sworn testimony or declaration disputing Petitioner's account of his arrest and subsequent detention.

The record includes a Form I-213, "Record of Deportable/Inadmissible Alien," dated September 10, 2026, which documents Petitioner's immigration history, including the September 10, 2026 arrest. (ECF No. 7-1). Under the heading "Disposition," the form states that Petitioner "was processed as a Notice to Appear" and was "served Form I-862, I-200 and all other legal documentation." (*Id*. at 4). The record also includes a Form I-286, "Notice of Custody Determination," dated September 10, 2026, and timestamped at 1:50 p.m. (ECF No. 7-4). The form provides two options for an authorized officer to indicate whether an individual will be detained or released: "Detained by the Department of Homeland Security" or "Released." (*Id*.).

The officer selected the option indicating that Petitioner would be detained. (*Id.*). The form further reflects that Petitioner requested review of ICE's custody determination but refused to sign the form. (*Id.*). Finally, the record includes a Form I-200, "Warrant for Arrest of Alien," dated September 10, 2026. (ECF No. 7-3).

## II. JURISDICTION AND LEGAL STANDARD

District courts have jurisdiction under 28 U.S.C. § 2241 to consider claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioner bears the burden of demonstrating that his detention violates the Constitution or federal law. *See, e.g.*, *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025). In resolving such claims, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. Because Petitioner was detained in New Jersey when he filed his Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction under § 2241.

Respondents nevertheless contend that 8 U.S.C. § 1252(b)(9) divests this Court of subject-matter jurisdiction. (ECF No. 22 at 4 n.3). The Court disagrees. 8 U.S.C. § 1252(b)(9) channels judicial review of questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States" into judicial review of a final order of removal. 8 U.S.C. § 1252(b)(9). As the Third Circuit recently explained, this provision encompasses "legal questions challenging the government's very basis for trying to remove (and thus detaining) [the petitioner]." *Khalil v. President, U.S.*, 164 F.4th 259, 274 (3d Cir. 2026). But where a petitioner is

"not asking for review of an order of removal" or "challenging any part of the process by which their removability will be determined. . . § 1252(b)(9) does not present a jurisdictional bar." *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). Moreover, the Executive Office for Immigration Review ("EOIR") regulations expressly distinguish custody and bond determinations from removal proceedings, providing that "[c]onsideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d). Here, Petitioner challenges the legality of his arrest and subsequent detention, not the Government's authority to remove him or the procedures governing his removal proceedings. Resolution of his claims does not require the Court to determine whether he is removable or otherwise interfere with the adjudication of his removal proceedings. Rather, the Court need only determine whether ICE complied with the constitutional and statutory requirements governing his arrest and detention. Accordingly, § 1252(b)(9) does not deprive this Court of jurisdiction.

Respondents also assert that Petitioner was required to exhaust administrative remedies before bringing his claim and failed to do so because he withdrew his request for a bond hearing before an immigration judge. (ECF No. 22 at 3–4). Although a bond hearing was scheduled for September 17, 2026, Petitioner's counsel requested additional time to prepare, and the Immigration Judge permitted Petitioner to withdraw his request without prejudice. (ECF No. 11-1 at 2; ECF No. 12-1 ¶¶ 7–10). Respondents contend that Petitioner's failure to pursue the available custody redetermination process precludes habeas relief. The Court disagrees. As discussed below, Petitioner challenges ICE's failure to conduct a meaningful individualized custody determination in the first instance. A subsequent bond hearing would not remedy the alleged constitutional

violation because it would not cure ICE's failure to exercise its discretion when initially deciding to detain Petitioner. *See Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025), and *Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025)). Because exhaustion under § 2241 is prudential rather than jurisdictional, the Court may excuse exhaustion where administrative remedies would be futile. *See, e.g.*, *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) ("Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.") (internal citation omitted). The Court finds that exhaustion is not required under these circumstances.

## III. DISCUSSION

Petitioner raises two challenges to the legality of his arrest and detention. First, Petitioner argues that his detention violates the Due Process Clause because ICE failed to conduct an individualized custody determination under 8 U.S.C. § 1226(a). (ECF No. 16 at 23–30). Second, Petitioner contends that ICE unlawfully arrested him without a warrant in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause. (*Id.* at 14–23). For the reasons set forth below, the Court finds that Respondents have failed to establish that ICE conducted the requisite individualized custody determination before detaining Petitioner in violation of his procedural due process rights. Because this conclusion provides an independent basis for habeas relief, the Court need not reach Petitioner's challenge to the legality of his arrest.

### *A. Individualized Custody Determination*

Petitioner argues that his detention violates the Due Process Clause because ICE failed to make an individualized custody determination under § 1226(a). (ECF No. 16 at 23–30).

Respondents maintain that ICE conducted the requisite initial custody determination, as reflected in its Notice of Custody Determination, Form I-286. (ECF No. 7 at 2).

*1. Statutory and Regulatory Framework*

Immigration authorities may only "detain non-citizens during removal proceedings when Congress has authorized them to do so." *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 554 (D.N.J. 2026) (internal citation omitted). Pending a determination on a noncitizen's removal, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or conditional parole, 8 U.S.C. § 1226(a), so long as the noncitizen is not subject to mandatory detention under § 1226(c). The implementing regulations establish a two-step framework for determining whether a noncitizen subject to removal proceedings should be detained or released.

First, DHS enforcement officials, including ICE agents, make an initial custody determination. *See* 8 C.F.R. § 236.1(c)(8). Under the regulations, an authorized officer "may, in the officer's discretion," release a noncitizen if the noncitizen demonstrates that "such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Id*. Although § 1226(a) affords immigration authorities discretion to detain or release a noncitizen, the exercise of that discretion necessarily requires consideration of the particular noncitizen's circumstances. Second, a noncitizen dissatisfied with ICE's initial custody determination may seek redetermination by an Immigration Judge, whose decision is subject to appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. §§ 1236.1(d)(1), (d)(3); *see also* 8 C.F.R. § 1003.19(a) ("Custody and bond determinations made by the service. . . may be reviewed by an immigration judge.").

This two-step framework reinforces and leaves no doubt that ICE must make a meaningful individualized custody determination in the first instance. The regulations expressly contemplate

that an Immigration Judge's review follows an "initial custody determination" by DHS. 8 C.F.R. § 1236.1(d)(1). That subsequent review presupposes that ICE has exercised its discretion in deciding whether to detain or release the noncitizen. If ICE could detain noncitizens categorically without any assessment of their individual circumstances, the initial custody determination would become a mere formality, effectively collapsing the two-step framework into a single substantive determination by the Immigration Judge. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) ("If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk."). The opportunity to seek a subsequent bond redetermination before an Immigration Judge does not relieve ICE of its independent obligation to meaningfully exercise its discretion when making the initial custody determination.[3]

The distinction between discretionary and mandatory detention under § 1226 further supports this conclusion. Whereas § 1226(a) authorizes the Attorney General to detain or release a noncitizen pending removal proceedings, § 1226(c) expressly requires detention of certain

[3] The Court further finds that ordering a bond hearing before an Immigration Judge would not adequately remedy the constitutional violation here. Nor would permitting ICE to make an initial custody determination only after Petitioner has already been subjected to detention for a significant period of time without the requisite process adequately remedy the constitutional deprivation identified here. As discussed, the regulatory framework contemplates two distinct custody determinations: an initial determination by ICE and a subsequent opportunity for redetermination before an immigration judge. Permitting ICE to detain a noncitizen without conducting the requisite individualized assessment, subject only to a later bond hearing, would effectively collapse this two-step framework into one and render ICE's independent obligation to exercise discretion meaningless. Moreover, a subsequent bond hearing would not cure the constitutional deficiency in Petitioner's initial detention. Therefore, the appropriate remedy is release rather than an order directing a bond hearing.

categories of noncitizens, including those with specified criminal histories. *See* 8 U.S.C. § 1226(a), (c). Congress thus distinguished between noncitizens for whom detention is mandatory and those for whom detention remains discretionary. Although § 1226(a) affords ICE discretion to detain or release a noncitizen, that discretion necessarily contemplates an individualized exercise of judgment rather than a categorical policy of detention without regard to the noncitizen's particular circumstances. To conclude otherwise would effectively convert discretionary detention under § 1226(a) into mandatory detention, notwithstanding Congress's express distinction between the two. Such an interpretation would also undermine the statutory scheme by permitting ICE to impose mandatory detention on noncitizens whom Congress did not subject to § 1226(c)'s mandatory detention requirements. While § 1226(a) does not require ICE to release any particular noncitizen, it requires ICE to meaningfully exercise the discretion Congress conferred.

*2. Due Process Clause*

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine what process is due, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *B.C. v. Att'y Gen. United States*, 12 F.4th 306, 314–15 (3d Cir. 2021) (applying the *Mathews* balancing test to determine the adequacy of process afforded to noncitizens in immigration proceedings). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *B.C.*, 12 F.4th at 315.

Here, the first factor weighs heavily in Petitioner's favor, as his detention directly implicates his fundamental interest in physical liberty. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *see also Bethancourt v. Soto*, 807 F. Supp. 3d 397, 409 (D.N.J. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

The second *Mathews* factor likewise weighs heavily in Petitioner's favor because the absence of an individualized custody determination creates a substantial risk that a noncitizen will be detained without adequate consideration of whether detention is warranted. *See, e.g.*, *Contreras Maldonado v. Cabezas*, No. 25-13004, 2025 WL 2985256, at *5 (D.N.J. Oct. 23, 2025) ("The risk of erroneous deprivation is high when ICE detains a person without identifying why that person presents a danger or flight risk."); *Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026) (same). Section 1226(a) authorizes discretionary detention, but that discretion must be exercised in an individualized manner. The record, however, fails to establish that ICE conducted such an assessment before deciding to detain Petitioner. Respondents contend, both in their brief and at oral argument, that the Form I-286 alone establishes that ICE made an individualized custody determination simply because the box for detained is checked. (ECF No. 7 at 2; Tr. of Oct. 7, 2026 Oral Arg. ("Oral Arg. Tr.") at 5:8–9 ("[T]he individualized custody determination was rendered pursuant to the I-286."); Oral Arg. Tr. at 9:9–11 ("Respondents are relying on the I-286 as reflective of that individualized custody determination.")). The Court is not persuaded.

There is absolutely nothing on the Form I-286 demonstrating that ICE conducted any individualized custody determination. Respondents concede that the Form I-286 "does not contain the individual determinations and decisions that led to the individualized custody determination," (Oral Arg. Tr. at 7:22–24), nor does it identify "the substantive considerations that went into [the individualized custody determination]." (*Id.* at 15:5–6). Further, although Respondents represented that additional "internal paperwork" supported the custody determination reflected on the Form I-286, (*id.* at 5:16–24, 8:5–10), they failed to produce that documentation or otherwise identify the particular facts or circumstances considered in deciding to detain Petitioner. Nor did Respondents submit a declaration or other evidence from the officer responsible for making the initial custody determination.[4]

Thus, while the Form I-286 establishes that ICE purportedly recorded a decision to detain Petitioner, it does not establish that the decision resulted from an individualized assessment of his circumstances. And despite having the opportunity to supplement the record and explain the basis for that decision, Respondents have not done so. Indeed, Respondents offer no facts or analysis as to any meaningful consideration of Petitioner's risk of flight or danger whatsoever. In short, the Government argues, without citation to any legal authority, that simply checking "Detained" on the Form I-286 *per se* establishes that an individualized custody determination occurred. The Court rejects that argument.

The Court does not suggest that Form I-286 must itself contain a detailed explanation of

[4] While the Government relied in part on the allegation that Petitioner resisted arrest, the Government neither reviewed nor produced the body-worn camera footage recorded during Petitioner's arrest. (ECF No. 7-1 at 2; Oral Arg. Tr. at 50:25–51:12). Moreover, Respondents have not established that the officer responsible for the initial custody determination considered this alleged conduct in determining whether Petitioner presented a danger or flight risk.

the officer's reasoning or that ICE must necessarily produce a particular form of documentation to establish that an individualized assessment occurred. Rather, the deficiency here is that Respondents have failed to identify *any* evidence whatsoever demonstrating that ICE actually considered Petitioner's individual circumstances before deciding to detain him. The mere existence of a custody determination form, without more, does not establish that ICE meaningfully exercised its discretion. The Court need not, and does not, determine the minimum procedural safeguards required to satisfy due process in this context. It suffices to conclude that, in this case, Respondents have plainly failed to establish that ICE conducted any meaningful individualized assessment.[5]

Finally, the third *Mathews* factor requires consideration of the Government's interests, including the administrative burdens associated with additional procedural safeguards. The Government's principal interests in immigration detention include "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *See, e.g.*, *Zadvydas*, 533 U.S. at 690 (cleaned up). Those interests are substantial, but requiring ICE to meaningfully assess whether a particular noncitizen presents a danger or flight risk imposes little additional burden because ICE is already responsible for making an initial custody determination under the regulatory framework. Indeed, Respondents have identified no particular facts suggesting that Petitioner's detention was necessary to advance either interest, nor have they

[5] Respondents further argue that the three-tiered regulatory framework for review (i.e., initial custody determination, custody redetermination by an Immigration Judge, and BIA appeal) provides Petitioner with multiple opportunities to seek bond such that there is "low risk for erroneous deprivation of liberty." (ECF No. 7 at 6). But Respondents' argument presupposes that ICE complied with the first step of that framework by conducting a meaningful individualized custody determination. Again, where ICE fails to undertake that initial assessment, the availability of subsequent review does not eliminate the risk of an erroneous deprivation of liberty.

demonstrated that conducting an individualized assessment would impose an undue administrative burden. As such, this factor also weighs in Petitioner's favor.

Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor. The significant deprivation of physical liberty, the risk of erroneous detention absent individualized consideration, and the limited additional burden of requiring ICE to exercise the discretion already conferred upon it establish that Petitioner's detention, absent a meaningful individualized custody determination, violated his procedural due process rights.[6]

*B. Warrantless Arrest*

Petitioner also argues that his detention is unlawful because ICE arrested him without a warrant in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause. (ECF No. 16 at 14–23). Respondents maintain that Petitioner's arrest during a "targeted enforcement operation" was lawful under 8 U.S.C. § 1226(a) because he had overstayed his visa. (ECF No. 7 at 4). Respondents further contend that Petitioner was arrested pursuant to a validly issued and served Warrant for Arrest of Alien, Form I-200. (*Id.*).

The Court need not resolve this question. As discussed above, Respondents have failed to establish that ICE conducted the requisite individualized custody determination before detaining Petitioner under § 1226(a). That constitutional violation provides an independent and sufficient basis for granting habeas relief. Even assuming ICE lawfully effectuated Petitioner's arrest, his

[6] The Court's conclusion is also consistent with the *Accardi* doctrine, which requires federal agencies to comply with their own regulations governing the rights of individuals subject to agency action. *See Leslie v. Att'y Gen.*, 611 F.3d 171, 175–76 (3d Cir. 2010) (discussing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). As the Third Circuit explained, rules promulgated by federal agencies that regulate the rights and interests of others are binding upon those agencies. *Id.* at 175–76 (citing *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422 (1942)).

subsequent detention violated his procedural due process rights because ICE failed to meaningfully exercise its discretion in determining whether continued detention was warranted. Because the Court's resolution of Petitioner's individualized custody determination claim affords him the relief sought, the Court need not decide whether his arrest independently violated the INA or the Due Process Clause.

**CONCLUSION**

For the foregoing reasons and those stated on the record at the October 7, 2026 hearing, the Court granted the Petition for Writ of Habeas Corpus, (ECF No. 1), and ordered Petitioner's release on October 7, 2026. (ECF No. 28).

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**